IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WENDEL DELGADO SANCHEZ, et al

Plaintiffs

v.

PEDRO TOLEDO DAVILA, et al

Defendants

**Civil No. 07-1709 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Co-Defendant Pedro Toledo-Dávila's ("Toledo") Motion for Summary Judgment (Dockets ## 84 & 85), and Plaintiffs' opposition thereto (Dockets ## 96 & 97). After reviewing the filings, and the applicable law, Toledo's motion for summary judgment is **GRANTED**.

**Procedural Background**

Plaintiffs seek relief for the damages suffered by Wendel Delgado Sánchez (hereinafter "Wendel"), and Dwight Delgado Sánchez ("Dwight") (collectively "Plaintiffs") as a result of the alleged illegal seizure, false arrest, imprisonment, and beating undertaken by members of the Puerto Rico Police Department. Plaintiffs' complaint is premised on Title 42 U.S.C.A. §1983, the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and several state laws.[1] Plaintiffs brought this suit against Toledo, the Police Department Superintendent; Francisco Carbó Marti, the Director of the drug and addictions control of Puerto Rico; Coriano, Lieutenant of the Carolina Tactics Operation; Carlos Carrión Rodríguez, Lieutenant of the Carolina Drug Division; Sanchez Ofaril, Supervisor of the Carolina Drug Division; agents José L. López Pagán, Endel Meléndez, Toledo Reyes, and

---

[1] The initial complaint was filed on August 8, 2007 (Docket # 1), and a first amended complaint was filed on August 15, 2007. Docket # 2. On December 26, 2007, Plaintiffs filed a second amended complaint. Docket # 12.

**CIVIL NO. 07-1709 (SEC)**                                                                 Page 2

Ernesto Santiago; Diego Figueroa, President of the Frente Unido de Policías Organizados (hereinafter FUPO); and several unnamed defendants.

On December 26, 2007, Plaintiffs filed a second amended complaint. Docket # 12. Defendants moved this Court to strike Plaintiffs' second amended complaint, however, their request was denied. Docket # 26. On January 28, 2008, Defendants moved for dismissal of the complaint. In its prior Opinion & Order, this Court dismissed with prejudice all of Plaintiffs' claims federal claims against Toledo, as well as Plaintiffs' Fifth, Eighth and Ninth Amendment claims against all Defendants. Docket # 40. On August 6, 2008, Plaintiff a motion requesting that this Court reconsider its prior holding, and reinstate all claims against Toledo. Docket # 42. Specifically, Plaintiffs argued that the allegations in the second amended complaint were sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted. This Court granted Plaintiffs' request, and their Section 1983 claims against Toledo were reinstated. Docket # 72.

On May 26, 2009, Toledo filed the instant motion. Docket # 84. Plaintiffs filed an opposition. Docket # 96.

**Standard of Review**

*FED. R. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines

**Civil No. 08-1607 (SEC)**                                                                                                    3

the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence");

**Civil No. 08-1607 (SEC)** 4

Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

When filing for summary judgment, both parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). Local Rule 56(e)(2) further states that, if the opposing party does not respond to a motion for summary judgment, "summary judgment should, if appropriate, be entered against that party." When "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. The First Circuit has held that when the parties ignore the Local Rule, they do so at their own peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Civil No. 08-1607 (SEC)**                                                                                                         **5**

**Applicable Law and Analysis**

In the present case, Defendant complied with Rule 56, and submitted a Statement of Uncontested Facts (Docket # 85) (hereinafter "Toledo's SUMF"), numbered, and supported by record citations. In opposition, Plaintiffs filed a "Motion Submitting Uncontested Material Facts in Support of Opposition to Motion for Summary Judgment" ("Plaintiffs' SUMF"). Docket # 97. Upon reviewing the record, however, this Court notes that Plaintiffs did not admit, deny or qualify Toledo's SUMF by reference to each numbered paragraph. Instead, Plaintiffs provided additional facts which are not related to Toledo's SUMF. Since Plaintiffs did not oppose Toledo's SUMF in compliance with Rule 56, this Court will deem uncontested those facts that are properly supported by the record. As a result, the facts set forth at Toledo's SUMF ¶¶ 1-4, and 6-10 are deemed unopposed.[2]

Furthermore, Plaintiffs failed to provide specific record citations in support of any of their assertions of fact, and SUMF ¶¶ 1[3] and 12 do not have record citations. Also, Exhibits # 1, 3, 4, 7, and 8 are not properly authenticated. The First Circuit has held that "[t]o be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)). In Carmona, the Court refused to give credence to "a purported copy of the investigation file -- unsworn, uncertified, and, at first, untranslated -- to the motion." Id. Additionally, the English Translation of Exhibit # 8, provided in support of SUMF ¶9, is missing pages 2-12. As a result, SUMF ¶ 9 will be disregarded when ruling on the instant motion. Notwithstanding, since

---

[2] SUMF ¶5 is a conclusion of law which is better left for this Court to decide.

[3] Notwithstanding, this statement of fact has been admitted by the parties, and as such, will be considered by this Court.

**Civil No. 08-1607 (SEC)**                                                                                           6

Plaintiffs' SUMF ¶¶ 4, 5, 8, and 10, which are supported by Exhibits ## 1, 3 and 4, coincide with Toledo's SUMF, said exhibits' validity is deemed admitted by Toledo. Accordingly, Plaintiffs' SUMF ¶¶ 4, 5, 8, and 10 will be considered by this Court.  Lastly, portions of Plaintiffs' SUMF ¶¶ 5, 8, and 10, set forth conclusions of law regarding alleged violations to the Puerto Rico Police Department's regulations, to Plaintiff's rights, and local laws, which are matters for this Court to decide.

      Based on the foregoing, the uncontested facts are as follows.  A search warrant was issued authorizing the search of Block # 23 House # 21, located at Sabana Gardens Street # 16.[4] Plaintiffs' SUMF ¶2. On August 9, 2006, Wendel and Dwight were standing in the street at Sabana Gardens. Id. at ¶3.[5] On even date, Plaintiffs were subject of a police intervention that culminated in their arrest, and imprisonment for approximately 12 hours. Toledo's SUMF ¶2. At that time, Toledo was the Superintendent of the Puerto Rico Police Department. Id. at ¶1. On the same day, Toledo suspended Wendel without pay. Id. at ¶6.  One day later, on August 10, 2006, Wendel received the suspension letter from Toledo, informing him that he was suspended without pay.  Id. at ¶7; Plaintiffs' SUMF ¶4. Wendel appealed the letter of suspension on August 17, 2006. Toledo's SUMF ¶8. A hearing was held on January 16, 2007, and Wendel was present. Id. at ¶¶9 & 10; Plaintiffs' SUMF ¶6. Therefore, Wendel was suspended for 8 months, and afterwards, he was expelled. Plaintiffs' SUMF ¶8.

---

    [4] Plaintiffs' proposed statement of fact ¶2 provides that they "were standing in front of houses 21 and 22 of Jardines de Carolina." However, the deposition cited in support thereof does not mention the name "Jardines de Carolina." Moreover, Exhibit # 6 states that the search warrant was directed at residences located in Sabana Gardens.

    [5] Although Plaintiffs' SUMF ¶ 3 states that "Wendell and Dwight Delgado were standing in front of houses 21 and 22 of Jardines de Carolina," as previously stated, the facts took place in Sabana Gardens. Furthermore, Wendel's deposition testimony, provided in support of said assertion of fact, does not clearly state that Plaintiffs were standing in front of residences 21 and 22. Instead, Wendel stated that they were standing on the street "in a corner." Docket # 97-7.

**Civil No. 08-1607 (SEC)**                                                                     7

Plaintiffs' only evidence regarding Toledo's failure to train the police force is his own perception and allegation that "you are not taught to beat on people at the Academy, and you are not taught to libel persons at the Academy." Toledo's SUMF ¶3. Plaintiffs have no evidence of lack of training other than the allegation in the previous statement. Id. at ¶4.

Although Plaintiffs contend that Toledo did not conduct an investigation before suspending Wendel, the suspension letter states that there was a preliminary investigation regarding Wendel's conduct. See Plaintiffs' SUMF ¶5; Exhibit # 1, Docket # 108-5. Toledo issued statements to the press and the T.V. news. Id. at ¶10.[6]

In his motion for summary judgment, Toledo contends that Plaintiffs failed to establish a Section 1983 claims against him. Specifically, Toledo avers that there is no causal connection between his actions, and the alleged illegal arrest. Toledo further argues that Wendel's procedural due process rights were not violated, insofar as he was granted a hearing regarding his suspension, and was duly advised about his right to appeal the same. In opposition, Plaintiffs argue that Toledo suspended Wendel the day after he was arrested and beaten, without due process of law and in violation of the Police Department's rules and regulations. Moreover, Plaintiffs contend that Toledo defamed Wendel when he appeared on TV, and commented on Wendel's suspension.  According to Plaintiffs, Toledo was aware of the administrative complaints filed against the arresting officers, and failed to adequately supervise, train, monitor and evaluate them. As such, they argue that Toledo tacitly encouraged and condoned their behavior, and is responsible under the respondeat supervisor doctrine.

---

[6] At Plaintiffs' SUMF ¶11, they posit that "Toledo did not provide adequate training to the Carolina drug division police officers regarding the penetration of houses." However, considering that Plaintiffs arrest took place on the street, not inside a house or structure, said statement of fact is irrelevant to the case at bar.

**Civil No. 08-1607 (SEC)**                                                                                          8

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). There are two essential elements of a Section 1983 claim: "(1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-152 (2nd Cir. 2006); Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005); Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995) (citing Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987)). This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez-Rodríguez, 882 F.2d 553, 559 (1st Cir. 1989); Mahoney, 424 F.3d at 89. In turn, this second element of causal connection requires that the plaintiff establish that each defendant's own actions deprived the plaintiff of his/her protected rights, see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58 (1978); Gutiérrez-Rodríguez, 882 F.2d at 562; Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Furthermore, the defendant's conduct must be shown to be intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. See Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986); Gutiérrez-Rodríguez, 882 F.2d at 562.

As for supervisory liability in §1983 actions, the rule is that "supervisors may only be found liable on the basis of their own acts or omissions." Gutiérrez-Rodríguez, 882 F.2d at 562. In order for a supervisor to be found liable under Section 1983, a plaintiff must show: (1) that the supervisor's own acts or omissions deprived plaintiff of a constitutionally protected right; (2) that his "conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others;" and (3) that there was "an 'affirmative link' between the street level misconduct and the action or inaction of supervisory officials." Id.

**Civil No. 08-1607 (SEC)**                                                                                          9

In the second amended complaint, Plaintiffs aver that Toledo "knew or should have known and identified the dangerous tendencies of (the arresting) police officers..." Docket # 12 at ¶ 29. They further allege that Toledo knew that said officers had received inadequate and deficient training. Id. According to Plaintiffs, Toledo failed to properly train, monitor, supervise, and evaluate the arresting police officers. Id. Moreover, they contend that Toledo "knew or should have known the many administrative complaints filed against (the arresting officers)" for civil rights violations, and he failed to take the necessary steps to prevent or correct the officers' improper conduct. Docket # 12 at ¶ ¶ 29 & 30. As such, Plaintiffs argue that Toledo was grossly negligent in exercising his responsibilities and, as such, is responsible for the violation of Plaintiffs' civil rights.

Notwithstanding, pursuant to the above mentioned uncontested facts, Plaintiffs' only evidence regarding Toledo's failure to train the police force is his own perception and allegation that "you are not taught to beat on people at the Academy, and you are not taught to libel persons at the Academy." Toledo's SUMF ¶3. Furthermore, in his deposition testimony, Wendel admits he has no evidence of lack of training other than the allegation in the previous statement. Id. at ¶4. Also, Plaintiffs admit that Toledo was not present during the arrest. As such, this Court finds that Plaintiffs failed to establish a causal connection between Toledo's conduct and the alleged deprivation of their federal rights. Accordingly, Plaintiffs' Fourth Amendment claims against Toledo are **DISMISSED with prejudice**.

*Due Process Claims*

This Court first notes that Dwight Delgado is not a police officer. Therefore, he lacks standing to set forth due process claims against Toledo. As such, Dwight's due process claims against Toledo are **DISMISSED with prejudice**.

Additionally, although Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985), mandates pre-termination hearings, the *Hudson-Parratt* doctrine bars Wendel's due process

**Civil No. 08-1607 (SEC)**                                                                                          10

claims. Pursuant to the same, due process violation claims, based on the unauthorized denial of pre-termination rights, fail when adequate post-deprivation remedies are provided to plaintiffs.

In order "to establish a procedural due process claims under Section 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi, 515 F.3d at 29. "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" De Vélez v. Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).[7]

This Court notes that, in invoking his procedural due process claims, Wendel argues that Toledo deprived him of the established pre-termination procedures. According to Wendel, he was summarily suspended, without an investigation into the facts of the case, or an administrative hearing pursuant to the Police Department's Personnel Regulations. He further notes that the hearing was held 5 months after his suspension. After reviewing the record, this Court finds that it is uncontested that Wendel was summarily suspended. Notwithstanding, the Police Department's Personnel Regulations allow the Superintendent to summarily suspend a member of the Force from employment and wages, prior to the administrative hearing, when there is misuse of public funds, lack of competence, misconduct or crime charged, or whenever there is a reasonable belief that the public's health or safety may be endangered. Article

---

[7] Employees classified as "career" or permanent" have vested property rights, and cannot be deprived of that right without due process of law. Borges-Colon v. De Jesus-Flores, 483 F.3d 1, 8 (1st Cir. 2006); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5 (1st Cir. 2000). At a minimum, career employees are entitled to "notice and a meaningful opportunity to respond" prior to termination. Figueroa, 221 F.3d at 5-6 (citations omitted); Monfort-Rodriguez, 599 F. Supp. 2d at 168. At the pre-termination stage, due process requires that "[t]he tenured public employee [receive] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ., 470 U.S. at 546.

**Civil No. 08-1607 (SEC)**                                                                 11

14.3(2)(b)(1)(b), Personnel Regulation #4216, May 11, 1990. Therefore, Toledo complied with the Personnel Regulations. Moreover, although Plaintiffs contend that Toledo did not conduct an investigation before suspending Wendel, the suspension letter states that there was a preliminary investigation regarding Wendel's conduct. See Plaintiffs' SUMF ¶5; Exhibit # 1, Docket # 108-5. Thereafter, a thorough investigation was conducted. Also, Wendel appealed the letter of suspension on August 17, 2006, and a hearing was held on January 16, 2007. Toledo's SUMF ¶8; Plaintiffs' SUMF ¶¶ 6, 9 & 10. As such, Wendel's rights were properly safeguarded.

Additionally, as previously mentioned, even if Toledo failed to provide Wendel the procedure due prior to making the decision to terminate them, he cannot succeed on his procedural due process claim unless he can show that the state failed to provide him with an adequate post-deprivation remedy. Id. (citing Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992) (holding that "[i]f a state provides adequate postdeprivation remedies -- either by statute or through the common-law tort remedies available in its courts -- no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation.").

Under the *Hudson/Parratt* doctrine, "when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." Hadfield v. Mc Donough, 407 F.3d 11, 19 (1st Cir. 2005); Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). As a result, public entities are protected from federal due process claims where the denial of process was caused by the negligent or intentional misapplication of state law by a government official. Id. In interpreting said doctrine, this Circuit has held that "a government official has committed a random and unauthorized act when he or she misapplies state law to deny an

**Civil No. 08-1607 (SEC)**                                                                                          12

individual the process due under a correct application of state law." Hadfield, 407 F.3d at 20. The underlying rationale behind this doctrine rests on the fact that a state cannot anticipate and control the random and unauthorized negligent or intentional conduct of its employees. Hudson, 468 U.S. at 533. More so considering that "one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signaling his intent." Id.

The *Hudson-Parratt* doctrine has been applied in the public employment context. Specifically, the First Circuit stated that a plaintiffs' procedural due process claims fail when "state law clearly provided for adequate notice and there was no suggestion that either by formal or informal means the state had authorized the giving of inadequate notice to persons who may be terminated, or that this was any form of regular practice," and proper post-deprivation remedies were provided. Hadfield v. Mc Donough, 407 F.3d 1 at 20.

Wendel does not contest that he was informed about his right to appeal to the Investigation, Processing and Appeal Committee (CIPA, for its Spanish acronym) in both the suspension, and the dismissal letters. Instead he argues that Toledo summarily suspended him in violation of the Personnel Regulations, intentionally deprived him of his right to a pre-termination hearing. As noted by this Circuit, "[i]n such situations, additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected interest." Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003). That is, in all likelihood, a pre-termination hearing would not have afforded Wendel the relief he sought. Thus considering the above-cited case law, and that adequate post-deprivation remedies were afforded to Wendel, his procedural due process claims fail.

Based on the foregoing, Plaintiffs' Section 1983 claims against Toledo are **DISMISSED with prejudice**.

*Supplemental State Law Claims*

**Civil No. 08-1607 (SEC)** 13

Having dismissed Plaintiffs' federal law claims against Toledo, their state law claims against said co-defendant are also dismissed. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.")

**Conclusion**

For the reasons stated above, Toledo's motion for summary judgment is **GRANTED,** and Plaintiffs' claims against Toledo are **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 8th day of December, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge