IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WENDEL DELGADO SANCHEZ, et al

Plaintiffs

**v.**

PEDRO TOLEDO DAVILA, et al

Defendants

**Civil No. 07-1709 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Wendel Delgado Sánchez (hereinafter "Wendel"), and Dwight Delgado Sánchez's ("Dwight") (collectively "Plaintiffs") Motion for Reconsideration (Docket # 120), and Defendant Pedro Toledo-Davila's opposition thereto (Docket # 127). After reviewing the filings, and the applicable law, Plaintiffs' motion for reconsideration is **DENIED.**

**Procedural Background**

Plaintiffs seek relief for the damages suffered by Plaintiffs as a result of the alleged illegal seizure, false arrest, imprisonment, and assault undertaken by members of the Puerto Rico Police Department. Plaintiffs' complaint is premised on Title 42 U.S.C.A. §1983, the Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution and several state laws.[1] Plaintiffs brought this suit against Toledo, the Police Department Superintendent; Francisco Carbó Marti, the Director of the drug and addictions control of Puerto Rico; Felicita Coriano-Rivera, Lieutenant of the Carolina Tactics Operation; Carlos Carrión Rodríguez, Lieutenant of the Carolina Drug Division; Carlos Sanchez-Ofaril, Supervisor of the Carolina Drug Division; agents José L. López Pagán, Endel Meléndez, Carlos Toledo-Reyes, and Ernesto Santiago; Diego Figueroa, President of the Frente Unido de Policías Organizados (hereinafter FUPO); and several unnamed defendants.

---

[1] The initial complaint was filed on August 8, 2007 (Docket # 1), and a first amended complaint was filed on August 15, 2007. Docket # 2. On December 26, 2007, Plaintiffs filed a second amended complaint. Docket # 12.

On December 26, 2007, Plaintiffs filed a second amended complaint. Docket # 12. Defendants moved this Court to strike Plaintiffs' second amended complaint, however, their request was denied, (Docket # 26, and on January 28, 2008, Defendants moved for dismissal. In its prior Opinion & Order, this Court dismissed with prejudice all of Plaintiffs' claims federal against Toledo, as well as Plaintiffs' Fifth, Eighth and Ninth Amendment claims against all Defendants. Docket # 40. On August 6, 2008, Plaintiff requested that this Court reconsider its prior holding, and reinstate all claims against Toledo. Docket # 42. Specifically, Plaintiffs argued that the allegations in the second amended complaint were sufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted. This Court granted Plaintiffs' request, and their Section 1983 claims against Toledo were reinstated. Docket # 72.

On May 26, 2009, Toledo moved for summary judgment (Docket # 84), and his request was granted by this Court (Dockets ## 114 & 115).  Shortly thereafter, Plaintiffs moved for reconsideration on procedural grounds. Docket # 120. Defendant opposed.[2] Docket # 127.

**Standard of Review**

FED. R. CIV. P. 59(e) allows a party, within ten (10) days of the entry of judgment, to file a motion seeking to alter or amend said judgment. The rule itself does not specify on what grounds the relief sought may be granted, and courts have ample discretion in deciding whether to grant or deny such a motion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004) (citations omitted).  In exercising that discretion, courts must balance the need for giving finality to judgments with the need to render a just decision.  Id. (citing Edward H. Bolin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993)).

Despite the lack of specific guidance by the rule on that point, the First Circuit has stated that a Rule 59(e) motion "must either clearly establish a manifest error of law or must present

---

[2] Although in his response Defendant fails to address the procedural issues raised by Plaintiffs, and merely discusses the pending administrative proceedings, this Court will address Plaintiffs' arguments individually.

newly discovered evidence." F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992) (citing Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). Rule 59(e) may not, however, be used to raise arguments that could and should have been presented before judgment was entered, nor to advance new legal theories. Bogosonian v. Woloohojian Realty Corp., 323 F.3d 55, 72 (1st Cir. 2003).

### Applicable Law and Analysis

*Procedural Issues*

In its prior Opinion and Order, this Court noted that although Defendant complied with Rule 56, and submitted a Statement of Uncontested Facts, numbered, and supported by record citations, Plaintiffs did not admit, deny or qualify Toledo's SUMF by reference to each numbered paragraph. Instead, Plaintiffs provided additional facts which were not related to Toledo's SUMF. Since Plaintiffs did not properly oppose Toledo's SUMF in compliance with Rule 56, this Court deemed as uncontested those facts that were properly supported by the record.[3]

Furthermore, this Court pointed out that Plaintiffs failed to provide specific record citations in support of any of their assertions of fact, and SUMF ¶¶ 1[4] and 12 did not have record citations. Also, Exhibits ## 1, 3, 4, 7, and 8 were not properly authenticated. Additionally, the English Translation of Exhibit # 8, provided in support of SUMF ¶9, was missing pages 2-12. Lastly, portions of Plaintiffs' SUMF ¶¶ 5, 8, and 10, set forth conclusions of law regarding alleged violations to the Puerto Rico Police Department's regulations, to Plaintiff's rights, and local laws, which were matters best left for this Court to decide.

---

[3] SUMF ¶¶ 1-4, and 6-10. SUMF ¶5, a conclusion of law, was left for this Court to decide.

[4] Notwithstanding, this statement of fact has been admitted by the parties, and as such, will be considered by this Court.

Plaintiffs contend that this Court erroneously failed to consider their Exhibits ## 1, 3, 4, 7, and 8 in ruling upon Defendant's motion for summary judgment. However, page 6 of this Court's Opinion and Order provides that "since Plaintiffs' SUMF ¶¶ 4, 5, 8, and 10, which are supported by Exhibits ## 1, 3 and 4, coincide with Toledo's SUMF, said exhibits' validity is deemed admitted by Toledo. Accordingly, Plaintiffs' SUMF ¶¶ 4, 5, 8, and 10 will be considered by this Court."  Docket # 114, p. 6. As such, Exhibits ## 1, 3, and 4 were not excluded in ruling upon Defendant's motion.

As to Exhibit # 7, an investigation request from the Director of the Internal Affairs Division, and Exhibit # 8, a recommendation issued by the Examining Officer, this Court finds that they were not properly authenticated. FED. R. EVID. 803 (8) provides that public records are not excluded by the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness." The First Circuit has held that "[t]rustworthiness in this context refers to matters such as whether the evidence is self- authenticating or contemporaneously compiled by a person of adequate skill and experience." Blake v. Pellegrino, 329 F.3d 43, 48 (1st Cir. Mass. 2003) (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 n.11 (1988)).  Although public records fall within the hearsay exception for "public records" in FED. R. EVID. 803(8), they must be properly authenticated under FED. R. EVID. 901 or 902. Rule 901(b) provides examples of authentication conforming under said rule, and provides that public records or reports are properly authenticated when there is "evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is kept from the public office where items of this nature are kept." In the present case, there is no affidavit from a custodian or record keeper, nor a certified copy of said exhibits under Rule 902.

Notwithstanding, even if this Court deemed Exhibit # 7 admitted, it is irrelevant for purposes of the motion for summary judgment, that is, Plaintiffs' procedural due process claims against Toledo, and allegations regarding his failure to provide adequate training. Even more,

it demonstrates that a thorough investigation took place.  By the same token, this Court notes that Exhibit # 8 provides a recommendation from the Examining Officer, and not a binding mandate for the Superintendent.[5] Furthermore, therein the Officer recommended that Wendel Delgado be suspended from work and salary for 120 days, and removed from his work unit for violating Article 14, Section 14.5, Sub-sections 1, 3, 27 and 29 of the Police Department's Personnel Regulations #4216, May 11, 1990. Thus the Examining Officer found Wendel violated the Personnel Regulations on several fronts. Additionally, Plaintiffs argument that this Court should have alerted them about the omission of pages 2-12 from the English translation of Exhibit # 8 lacks merit. In an adversarial system, the parties cannot ask this Court to continually remind them of their need to comply with the applicable procedural rules. The parties bear the burden of complying with the applicable procedural rules, or face the consequences of their omissions.

*Adequate training*

Plaintiffs also argue that this Court did not address their allegations regarding Defendant's failure to provide adequate training regarding the penetration of houses. However, on page 6, footnote 4, this Court specifically stated: "[a]t Plaintiffs' SUMF ¶11, they posit that 'Toledo did not provide adequate training to the Carolina drug division police officers regarding the penetration of houses.' However, considering that Plaintiffs arrest took place on the street, not inside a house or structure, said statement of fact is irrelevant to the case at bar." Docket # 114, p. 6, n. 4. This Court also emphasized that pursuant to the uncontested facts, Plaintiffs' only evidence regarding Toledo's failure to train the police force is his own perception and allegation that "you are not taught to beat on people at the Academy, and you are not taught to libel persons at the Academy." Docket # 114 (citing Toledo's SUMF ¶3).  Plaintiffs have no

---

[5]  Plaintiffs later provided a Certified English translation. Docket # 120.

evidence of lack of training other than the allegation in the previous statement, which is insufficient to survive summary judgment. Id. (citing Toledo's SUMF ¶ 4).

*Procedural due process*

This Court points out that, invoking his procedural due process claims, Wendel argues that Toledo deprived him of the established pre-termination procedures. According to Wendel, he was summarily suspended, without an investigation into the facts of the case, or an administrative hearing pursuant to the Police Department's Personnel Regulations. He further contends that the hearing was held five months after his suspension, in violation of the applicable rules.

After reviewing the record, this Court finds that it is uncontested that Wendel was summarily suspended. Notwithstanding, the Police Department's Personnel Regulations allows the Superintendent to summarily suspend a member of the Force from employment and wages, prior to the administrative hearing, when there is misuse of public funds, lack of competence, misconduct or crime charged, or whenever there is a reasonable belief that the public's health or safety may be endangered. Article 14.3(2)(b)(1)(b), Personnel Regulation #4216, May 11, 1990. Although Wendel was not accused of committing a crime, investigating officers had observed him on previous occasions at the site of the drug bust that took place on August 10, 2006, and in fact Wendel was arrested on said date during the operative. Furthermore, pursuant to the summary suspension letter, as well as the examining officer's report,[6] Wendel was suspended for a period of one hundred twenty days, and removed for his work unit for violations to Article 14, Section 14.5, Serious Offenses ## 1, 3, 27, and 29.[7] Personnel Regulation #4216.

---

[6] Exhibit # 8, which was not considered by this Court in ruling upon the motion for summary judgment.

[7] Specifically, Wendel showed "manifest inability, incompetence, carelessness, bias or negligence in the performance of his duties, functions, and responsibilities," "harmful, inmoral and disorderly conduct detrimental to the Police Department," "associate with...persons with doubtful reputations," and leaving "service weapons or any other weapon authorized to be owned or carried

Therefore, Toledo had reason to summarily suspend Wendel, and acted in compliance with the Personnel Regulations.

Moreover, although Plaintiffs contend that Toledo did not conduct an investigation before suspending Wendel, the suspension letter states that the action corresponded to a preliminary investigation regarding Wendel's conduct. Docket # 114, p.11 (citing Plaintiffs' SUMF ¶5; Exhibit # 1, Docket # 108-5). Then, after the summary suspension, a thorough investigation was conducted. Also, Wendel appealed the letter of suspension on August 17, 2006, and a hearing was held on January 16, 2007. Docket # 114, p. 11 (citing Toledo's SUMF ¶8; Plaintiffs' SUMF ¶¶ 6, 9 & 10). Considering the foregoing, Wendel's rights were properly safeguarded.

Additionally, as previously held by this Court, even if Toledo failed to provide Wendel the procedure due prior to making the decision to terminate him, he cannot succeed on his procedural due process claim without showing that the state failed to provide him with an adequate post-deprivation remedy. Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996) (citing Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992) (holding that "[i]f a state provides adequate postdeprivation remedies -- either by statute or through the common-law tort remedies available in its courts -- no claim of a violation of procedural due process can be brought under § 1983 against the state officials whose random and unauthorized conduct caused the deprivation."). Specifically, the First Circuit has held that a plaintiffs' procedural due process claims fail when "state law clearly provided for adequate notice and there was no suggestion that either by formal or informal means the state had authorized the giving of inadequate notice to persons who may be terminated, or that this was any form of regular practice," and proper post-deprivation remedies were provided. Hadfield v. Mc Donough, 407 F.3d 1 at 20.

---

withint the reach of persons who may use them inappropriately or allow that others make use of the same, or not take the appropriate precautions with these."

Wendel was afforded an investigation, and subsequent hearing regarding his suspension. Moreover, he does not contest that the Police Department informed him in both the suspension, and the dismissal letters about his right to appeal to the Investigation, Processing and Appeal Committee (CIPA, for its Spanish acronym). As a matter of fact, the administrative case is still pending before CIPA. Instead he argues that Toledo summarily suspended him in excess of five months, in violation of the Personnel Regulations, and intentionally deprived him of his right to a pre-termination hearing.  As noted by this Circuit, "[i]n such situations, additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected interest." Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003). Under the *Hudson/Parratt* doctrine, "when a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." Hadfield v. Mc Donough, 407 F.3d 11, 19 (1st Cir. 2005); Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). That is, in all likelihood, a pre-termination hearing would not have afforded Wendel the relief he sought.

Plaintiffs argue that the *Hudson/Parratt* doctrine is inapplicable to the case at bar because Toledo is sued in his personal capacity, not as a state actor. However, they fail to provide case law in support of said argument. Moreover, the Supreme Court has held that "[p]ersonal-capacity suits...seek to impose individual liability upon a government officer for actions taken under color of state law," Hafer v. Melo, 502 U.S. 21, 25 (1991), while official-capacity suits..."generally represent only another way of pleading an action against an entity of which an officer is an agent." Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). Considering that the *Hudson/Parratt* applies when the "deprivation of a property interest is occasioned by random and unauthorized conduct by state officials...," and that Toledo was sued in his personal capacity for his actions while acting under color of state law, Plaintiffs arguments on this front are unpersuasive.

*Supplemental state law claims*

Having dismissed Plaintiffs' federal law claims against Toledo, their state law libel claims against said co-defendant are also dismissed. See <u>Newman v. Burgin</u>, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.")

**Conclusion**

For the reasons stated above, Plaintiffs' motion for reconsideration is **DENIED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 2nd day of March, 2010.


*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge